IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


UNITED STATES OF AMERICA                                          PLAINTIFF


V.                    Criminal No. 2:16-cr-20007-PKH-MEF-2


AMELIA MARIE SPIOTTO                                               DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Defendant's Motion to Vacate Sentence Pursuant to 28 U.S.C. §

2255 filed on March 25, 2020.  (ECF No. 108).  The Government filed its response on April 28,

2020.  (ECF No. 111).  Defendant filed a reply to the Government's response on June 15, 2020.

(ECF No. 114).  The matter is ready for report and recommendation.

### I.    Background

On February 19, 2016, a Criminal Complaint was filed against Defendant, Amelia Marie

Spiotto ("Spiotto"), alleging that on or about February 1, 2016, in the Western District of Arkansas,

Spiotto used, persuaded, induced, enticed, and coerced a minor with the intent that the minor

engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct,

and that the visual depiction was produced using materials that had been mailed, shipped, and

transported in interstate and foreign commerce by any means, in violation of 18 U.S.C. § 2251(a).

(ECF No. 1).  An Arrest Warrant was issued the same date.  (ECF No. 2).

1

On March 16, 2016, Spiotto was named in an Indictment charging her with one count of conspiracy to produce child pornography (Count One) and two counts of production of child pornography (Counts Four and Five), in violation of 18 U.S.C. §§ 2251(a) and (e). (ECF No. 11). Having fled Arkansas, Spiotto was eventually arrested on April 25, 2016 in the Western District of Michigan. (ECF No. 19, p. 2). A Rule 5 hearing was conducted in the Western District of Michigan on April 26, 2016, and a commitment was entered to return Spiotto to the Western District of Arkansas. (*Id.*). Spiotto appeared for arraignment on May 12, 2016, at which time Spiotto entered a not guilty plea to the Indictment. (ECF No. 24). Mr. Russell A. Wood ("Wood"), a CJA Panel attorney, was appointed to represent Spiotto. (ECF Nos. 24, 28). Wood requested discovery in open court. (ECF No. 24).

Wood then filed an Unopposed Motion to Determine Competency of Defendant on June 8, 2016. (ECF No. 30). An Order granting the motion and directing a psychiatric or psychological examination was entered on June 9, 2016. (ECF No. 31).

On June 20, 2016, Spiotto sent a letter to the Court requesting the discharge of attorney Wood and the appointment of different counsel. (ECF No. 32). By Text Only Order entered on June 21, 2016, the Court granted Spiotto's motion and appointed Aubrey Barr, a CJA Panel attorney, to represent Spiotto. Release of Spiotto's medical records to attorney Barr was authorized by the Court (ECF No. 36), and the deadline for completion of Spiotto's psychological evaluation was extended to August 23, 2016. On August 16, 2016, a Motion for Substitution of Counsel was filed by retained counsel, Jeff Rosenzweig ("Rosenzweig") and Kimberly R. Weber ("Weber"), and a Text Only Order granting the substitution of counsel was entered on August 18, 2016.

2

A Forensic Evaluation report prepared by Samantha Shelton, Psy.D., and reviewed by Lisa Hope, Psy.D., was received and filed under seal on September 14, 2016. (ECF No. 43). The report concluded that while there was evidence to indicate Spiotto met criteria for a diagnosis of a personality disorder, the signs or symptoms did not impair her ability to understand the nature and consequences of the court proceedings against her or her ability to properly assist counsel in her defense. (*Id.*, pp. 22-23). By Text Only Order entered on September 14, 2016, a jury trial was reset for October 24, 2016.

Defense counsel then filed a second Motion for Psychiatric Examination (ECF No. 47) and a Notice of Insanity Defense (ECF No. 48) on October 7, 2016. An Order was entered on October 12, 2016, granting the motion for a psychiatric or psychological examination to determine whether Spiotto was insane at the time of offense. (ECF No. 49).

A Forensic Evaluation report prepared by Diana Schoeller Hamilton, Psy.D., and reviewed by Daniel D. Kim, Psy.D., was received and filed under seal on December 30, 2016. (ECF No. 51). The report concluded that at the time of the commission of the acts constituting the alleged offenses, Spiotto "was not suffering from a mental disease or defect which would render her unable to appreciate the nature, quality, and wrongfulness of her alleged offense behavior." (*Id.*, p. 11).

A jury trial was reset on January 17, 2017 (Text Only Order entered December 30, 2016), and then continued by motion of defense counsel (ECF No. 52) until March 13, 2017 (Text Only Order entered January 4, 2017).

On February 8, 2017, Spiotto appeared with her counsel before the Hon. P. K. Holmes, III, Chief U.S. District Judge, for a change of plea hearing. (ECF No. 54). A written Plea Agreement was presented to the Court, and Spiotto pleaded guilty to Counts Four and Five of the Indictment.

(ECF No. 54; ECF No. 55, ¶ 1).  The Court accepted Spiotto's guilty plea but reserved approval of the plea agreement pending completion of a presentence investigation.  (ECF No. 54).

An initial Presentence Investigation Report ("PSR") was prepared by the United States Probation Office on May 5, 2017.  (ECF No. 56).  On May 15, 2017, the Government advised that it had two objections to the PSR, neither of which were guideline determinative.  (ECF No. 59). The Government's first objection sought inclusion of excerpts of two stories written by Spiotto which detailed fantasy sexual encounters between adults and little children.  (*Id.*, p. 1).  The second objection sought to add information regarding her use of an alias, her knowledge of felony charges against her in Arkansas, and that she fled Arkansas to avoid prosecution.  (*Id.*, p. 2).  The Probation Officer noted revisions to the final PSR to include the information sought to be added by the Government.  (ECF No. 64-1, p. 1).

On June 2, 2017, Spiotto advised that she had 17 objections to the initial PSR, including objections to the reported offense conduct, the offense level computation, certain offender characteristics, and her mental and emotional health.  (ECF No. 61).  Aside from making some revisions related to Spiotto's personal history, the Probation Officer made no substantive changes to the final PSR based on Spiotto's objections, noting that many of the objections did not appear to impact the guideline calculation.  (ECF No. 64-1, pp. 2-5).

A final PSR was submitted to the Court on June 26, 2017.  (ECF No. 64).  The final PSR determined that Spiotto's conduct related to Count Four called for a base offense level of 32.  (ECF No. 64, ¶ 73).  Finding that Count Four involved a minor who had not attained the age of 12 years, the offense level was increased by four levels.  (*Id.*, ¶ 74).  A two-level increase was assessed because Count Four involved the commission of a sexual act or sexual contact.  (*Id.*, ¶ 75).  Noting

4

that a cellular phone and Toshiba hard drive were used to possess, distribute, and produce child pornography, a two-level increase was assessed because Count Four involved distribution.  (*Id.*, ¶ 76).  A four-level increase was assessed because Count Four involved material that portrays sadistic and masochistic conduct or other depictions of violence or an infant or toddler.  (*Id.*, ¶ 77).  Finally, a two-level enhancement was made because the minor victim was in the custody, care, and supervisory control of Spiotto at the time of the Count Four conduct.  (*Id.*, ¶ 78).  Due to these enhancements, Spiotto's adjusted offense level for Count Four was determined to be 46.  (*Id.*, ¶ 82).

Spiotto's conduct related to Count Five also called for a base offense level of 32.  (ECF No. 64, ¶ 83).  Because the Count Five minor victim had not attained the age of 12 years, the offense level was increased by four levels.  (*Id.*, ¶ 84).  A four-level increase was assessed because Spiotto caused the Count Five minor victim to engage in a sexual act by using force against the minor victim.  (*Id.*, ¶ 85).  Again, noting that a cellular phone and Toshiba hard drive were used to possess, distribute, and produce child pornography, a two-level increase was assessed because Count Five involved distribution.  (*Id.*, ¶ 86).  A four-level increase was assessed because Count Five involved material that portrays sadistic and masochistic conduct or other depictions of violence or an infant or toddler.  (*Id.*, ¶ 87).  A two-level enhancement was made because the minor victim was in the custody, care, and supervisory control of Spiotto at the time of the Count Five conduct.  (*Id.*, ¶ 88).  These enhancements raised Spiotto's adjusted offense level for Count Five to 48.  (*Id.*, ¶ 92).

A two-level multiple count adjustment was made, resulting in a combined adjusted offense level of 50.  (ECF No. 64, ¶¶ 93-96).  Since the offenses of conviction are covered sex crimes,

career offender provisions did not apply, and Spiotto engaged in a pattern of activity involving prohibited sexual conduct, a five-level increase was made pursuant to USSG § 4B1.5(b)(1), and this raised Spiotto's offense level to 55. (*Id.*, ¶ 97). After a three-level reduction for acceptance of responsibility was made, Spiotto's total offense level was 52. (*Id.*, ¶¶ 98-100). Spiotto's lack of significant criminal history resulted in a criminal history score of zero, placing her in criminal history category I. (ECF No. 64, ¶¶ 108-111).

The statutory minimum term of imprisonment for each of Spiotto's offenses is 15 years; the statutory maximum term is 30 years. (ECF No. 64, ¶ 160). A total offense level greater than 43 is to be treated as an offense level of 43. (*Id.*, ¶ 161). Based upon a total offense level of 43 and a criminal history category of I, Spiotto's advisory guidelines range was determined to be life imprisonment. Pursuant to USSG § 5G1.2(d), however, where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence; therefore, Spiotto's guideline range was determined to be 720 months imprisonment, 360 months on each count, to run consecutively. (*Id.*).

Spiotto's counsel filed a Sentencing Memorandum on August 1, 2017. (ECF No. 75). It argued for a downward variance and asserted that a sentence of 15 years was sufficient to serve the sentencing purposes of 18 U.S.C. § 3553(a). It stated that her offenses "arose from a confluence of her mental health issues," and more specifically that her Borderline Personality Disorder and fear of abandonment by her Co-Defendant, James Spiotto, led her to commit the offenses. (*Id.*, pp. 5-8).

Spiotto appeared for sentencing on August 23, 2017. (ECF Nos. 90, 102). She expressed satisfaction with the counsel, representation, and advice received from her counsel. (ECF No. 102,

p. 4).  She acknowledged reading the PSR and discussing it with her counsel.  (*Id.*).  The Court noted that defense counsel had, by e-mail, advised that Spiotto withdrew all her objections to the PSR, except her objection regarding a basis for a downward departure or variance.  (*Id.*, p. 5).  The Court overruled the objection as it related to a request for a downward departure but stated that it would consider Spiotto's request for a downward variance.  (*Id.*, pp. 5-7).  There being no other objections to the PSR, the Court adopted the PSR without changes and accepted the Plea Agreement Spiotto made with the Government.  (*Id.*, p. 7).  The statutory penalties were set forth, including a mandatory minimum sentence of 15 years on each count, and a maximum term of 30 years on each count.  (*Id.*, pp. 7-8).

Reviewing the guidelines calculation in the PSR, the Court determined that Spiotto's adjusted offense level for Count Four is level 46 (ECF No. 102, pp. 8-9), and the adjusted offense level for Count Five is level 48 (*Id.*, p. 9).  Noting that each count of conviction equated to one unit, for a total of two units, the Court acknowledged that two levels must be added to the highest offense level, resulting in a level 50.  (*Id.*).  A further increase of five levels was required because the offense of conviction is a covered sex crime; Spiotto is not a career offender; Spiotto had not been previously convicted of a sex offense; and, because Spiotto engaged in a pattern of activity involving prohibited sexual conduct.  (*Id.*, p. 10).  The Government moved to award Spiotto a third point for acceptance of responsibility, and the Court granted the motion.  (*Id.*).  After all these adjustments, the Court found Spiotto's total offense level to be 52, and since that was greater than 43, it was treated as if it were level 43.  (*Id.*).  The Court found that a total offense level of 43, together with a category I criminal history, resulted in an advisory guidelines range of life imprisonment, but because the statutory maximum sentence on each count of conviction was 30

years, the statutory maximum of 60 years (720 months) becomes the recommended sentence under the Guidelines.  (*Id.*, pp. 10-11).

Having already overruled Spiotto's objection to the PSR regarding factors she claimed would warrant a downward departure, the Court stated again that the facts of the case did not authorize a departure, and that even if departure were authorized under the facts the Court would exercise its discretion not to depart.  (ECF No. 102, p. 11).  The Court then generally noted the sentencing factors set forth in 18 U.S.C. § 3553(a).  (*Id.*, pp. 11-12).

Spiotto requested a downward variance in the case to a term of 15 years on each count with the terms to run concurrently, and the Court advised that it had read and considered the arguments set forth in Spiotto's Sentencing Memorandum, as well as the Government's Memorandum in Response.  (ECF No. 102, p. 12).  Spiotto was then permitted to proceed with proof in support of her request for a downward variance.

Dr. Benjamin Silber, a forensic psychologist at the Arkansas State Hospital, was called to testify on behalf of Spiotto.  (ECF No. 102, pp. 12-13).  Dr. Silber had testified in court approximately 12 times before, mostly in Arkansas state courts but twice before in federal courts while he was at Butner, North Carolina.  (*Id.*, p. 15).  In addition to reviewing various records, Dr. Silber interviewed Spiotto on May 26, 2017 for about three-and-a-half hours.  (*Id.*, p. 21). Consistent with the conclusions of two federal forensic examiners, Dr. Silber also concluded that Spiotto has borderline personality disorder.  (*Id.*, pp. 22-23).  He described the characteristics of borderline personality disorder for the Court, noting that Spiotto met all nine diagnostic criteria. (*Id.*, pp. 23-25).  He felt Spiotto met "most of the profile that a lot of research has supported." (*Id.*, p. 30).

8

Dr. Silber opined that Spiotto would likely benefit from dialectical behavior therapy ("DBT").  (ECF No. 102, p. 31).  He further expressed his view that Spiotto's "risk of recidivating is fairly low regardless of whether she does the therapy."  (*Id*., p. 32).  He noted that during his interview with Spiotto she reflected an awareness of the wrongfulness of her conduct.  (*Id*., pp. 33-34).

During cross-examination, Dr. Silber indicated that his diagnosis of borderline personality disorder was based on his interview of Spiotto, but also upon the testing he administered and his review of the two prior forensic evaluations conducted by psychologists at the BOP.  (ECF No. 102, pp. 35-36).  He explained that the test he administered to Spiotto, the Personality Assessment Inventory ("PAI"), has four different validity scales to test if someone is exaggerating or malingering, and that Spiotto scored within the normal expected range for all four of those scales.  (*Id*., pp. 37-39).  Dr. Silber opined that the threat of losing Spiotto's relationship with her Co-Defendant, James Spiotto, led to her participation in this crime.  (*Id*., p. 49).

Dr. Silber further testified that he would not say Spiotto's borderline personality disorder caused her to commit the offenses, he did feel that it impacted her decision-making at that time.  (*Id*., p. 60).  Upon inquiry by the Court, Dr. Silber stated his belief that Spiotto's level of dependence and fear of abandonment led to the offenses even though her relationship with James Spiotto was short in duration.  (*Id*., pp. 63-64).

The Court acknowledged receipt and review of several letters of support for Spiotto.  (*Id*., p. 67).  Jeff Crosby, the father of one of Spiotto's minor victims, then spoke regarding the impact of Spiotto's conduct on his family and expressed his hope that the Court impose the maximum possible sentence.  (*Id*., pp. 67-71).

The Government recommended imposing a sentence of 60 years. (ECF No. 102, p. 71). In support of this, AUSA Dustin Roberts argued that "the facts involved in this case are the worst of the worst," and "[w]ithin that context, Amelia Spiotto is the worst." (*Id.*, pp. 71-72). He further argued that Spiotto's evidence that she has a borderline personality disorder does not overshadow the fact that she knew what she was doing was wrong, that there was objective evidence that she enjoyed what she was doing, and that she failed to provide any basis for mitigation of her sentence. (*Id.*, pp. 73-74).

Ms. Weber addressed Spiotto's history and characteristics, including her mental illness; her abusive past marriage to Anthony Spiotto; her two suicide attempts in 2015; being removed from the marital home and being prevented from seeing her children; and, the beginning of her relationship with James Spiotto (Anthony's nephew). (ECF No. 102, pp. 75-76). The letters of support were mentioned. (*Id.*, pp. 76, 79). Spiotto's diagnosis of borderline personality disorder was emphasized, with Ms. Weber arguing that having nine of out nine attributes of the disorder took it outside of a typical case. (*Id.*, p. 77). Blame was placed on James Spiotto, and it was argued that Spiotto "engaged in this behavior to please her master, to please her daddy, to please her god, to please the sir," and that James had prostituted her out to older men and also threatened to hinder her custody case and blackmail her. (*Id.*, p. 80). Ms. Weber pointed out that Spiotto was receiving treatment, including medications such as Lithium, and that Spiotto was very remorseful about her conduct. (*Id.*). Ms. Weber contended that sentencing Spiotto to 60 years was effectively a life sentence. (*Id.*, p. 81). Ultimately, Ms. Weber argued that although Spiotto knew her conduct was wrong, "[s]he just couldn't conform her conduct because of this [borderline personality disorder] and because of the overreaching and strongarming of James Spiotto," and a sentence of

10

15 years was suggested.  (*Id*., p. 82).

Exercising her right to allocution, Spiotto apologized to the victims of her actions and stated her actions would "fill me with shame and regret for the rest of my life."  (ECF No. 102, p. 83).  She said James Spiotto isolated her from her family and manipulated her any way he could. (*Id*.).  She related physical and psychological abuse by James Spiotto and her 2015 suicide attempts.  (*Id*., p. 84).  She stated her anti-anxiety medication "heightened the symptoms of my bipolar disorder causing me to take risks and exhibit behaviors that were unusual for me."  (*Id*.). Spiotto said after expressing disinterest in James Spiotto's affinity for child pornography, James "kicked [her] out of the house" and she became inconsolable.  (*Id*., p. 85).  Since isolation was her biggest fear at the time, she complied with James' request that she write child pornography stories for him, and when she did, James let her start staying the night with him again.  (*Id*.).  While recognizing that her conduct was unconscionable, she asserted that she just "didn't have the tools to fight my disease," and "I know with treatment and support I will never reoffend."  (*Id*., pp. 85-86).

The Court first addressed the 18 U.S.C. § 3553(a) sentencing factors as they related to the downward variance requested by Spiotto's counsel.  (ECF No. 102, p. 87).  Noting that Spiotto's mental health profile was "very typical" of many of the criminal defendants seen by the Court, the Court found that a downward variance was not warranted because of her diagnosis of a personality disorder.  (*Id*.).  The Court observed that Spiotto had the requisite mental intent to knowingly and willfully commit serious criminal offenses; the offenses were particularly egregious because people she knew, whom she betrayed, entrusted their children to her, and "[t]he victimization here is beyond what occurs in a normal case"; and, that Spiotto's conduct was unlike anything the Court

11

had seen before.  (*Id*., p. 88).  The Court concluded that a sentence according to the Sentencing Guidelines was appropriate, and a sentence to the statutory maximum of 360 months imprisonment on each count of conviction, to run consecutively for a total of 720 months imprisonment, was imposed, along with supervised release for life, payment of $2,100.00 in restitution, and $200.00 in special assessments.  (*Id*., pp. 89-92).

Judgment was entered by the Court on August 24, 2017.  (ECF No. 91).  Spiotto pursued a direct appeal, arguing that the Court abused its discretion and imposed a substantively unreasonable sentence.  (ECF No. 107-2, p. 2).  The Court of Appeals for the Eighth Circuit affirmed Spiotto's conviction and sentence on December 27, 2018.  (ECF No. 107-2).

Spiotto filed her Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (the "motion") on March 25, 2020.  (ECF No. 108).  The motion asserts seven grounds for relief: (1) ineffective assistance of counsel in the plea process as counsel failed to advise her of the 720 month guideline range and did not explain "she had nothing to lose" by going to trial; (2) ineffective assistance of counsel in the pre-trial process for failing to move to suppress evidence, failing to move for dismissal of the indictment, and failing to move for a change of venue; (3) ineffective assistance of counsel in the sentencing process for failing to investigate and to object to unlawful, false, and unreliable evidence used to determine sentencing range; (4) ineffective assistance of counsel on appeal for failing to investigate and present the strongest issues available on appeal and for failing to preserve viable issues for collateral review; (5) a Sixth Amendment violation due to counsel having an actual conflict of interest; (6) ineffective assistance of counsel for cumulative errors by counsel; and, (7) the conviction and sentence violate the First, Fourth, Fifth, Sixth and Eighth Amendments to the U.S. Constitution.  (*Id*., pp. 5-10).

12

The United States' response in opposition to the motion was filed on April 28, 2020.  (ECF No. 111).  Spiotto filed a reply on June 15, 2020.  (ECF No. 114).

## II.    Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  A thorough review of Spiotto's motion and the files and records of this case conclusively shows that Spiotto is not entitled to relief, and the undersigned recommends the dismissal of Spiotto's § 2255 motion with prejudice.

### A.    Legal Standard for Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases."  *Id.*

at 688.  Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690).  Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission.  *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991).  If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim.  *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

### B.      Ineffective Assistance of Counsel in the Plea Process

Spiotto first claims her counsel "failed to advise [her] as to all facts and law relevant to her decision to plead guilty," and more specifically, that counsel did not explain to her "in a way she could understand" that her sentencing range would be 720 months if she pleaded guilty, even with acceptance of responsibility, and that "she had nothing to lose by going to trial."  (ECF No. 108, p. 5).  Spiotto then asserts that had she been so advised, "there is a reasonable probability that she

14

would have pleaded not guilty and proceeded to trial." (*Id.*).

Spiotto pleaded guilty to the offenses of conviction. When a guilty plea is entered by the movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973). As the Court in *Tollett* eloquently explained:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advice he received from counsel was not within the standards set forth in *McMann*[1].
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Id*. at 267. (Emphasis added.)

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *Bass*, 739 F.2d at 406.

---

[1] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *Machibroda v. United States*, 368 U.S. 487, 493 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that the guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

Spiotto was initially represented by appointed counsel, Russell A. Wood, a CJA Panel attorney. (ECF Nos. 24, 28). Wood requested discovery in open court (ECF No. 24) and later filed a motion to determine Spiotto's competency (ECF No. 30). An Order directing a psychiatric or psychological examination was entered on June 9, 2016. (ECF No. 31).

On June 20, 2016, Spiotto sent a letter to the Court requesting the discharge of attorney Wood and the appointment of different counsel. (ECF No. 32). The Court granted Spiotto's motion and appointed Aubrey Barr, a CJA Panel attorney, to represent Spiotto. (Text Only Order entered June 21, 2016). Spiotto then retained counsel, Jeff Rosenzweig and Kimberly R. Weber, who moved for substitution of counsel on August 16, 2016. (ECF No. 37). A Text Only Order granting the substitution of counsel was entered on August 18, 2016.

The forensic evaluation ordered on June 9, 2016 resulted in a report finding that while there was evidence indicating Spiotto met criteria for a diagnosis of a personality disorder, the signs or

symptoms did not impair her ability to understand the nature and consequences of the court proceedings against her or her ability to properly assist counsel in her defense. (ECF No. 43, pp. 22-23). A jury trial was reset for October 24, 2016.

Rosenzweig and Weber requested a second psychiatric examination (ECF No. 47), and they gave notice of an insanity defense (ECF No. 48) on October 7, 2016. The Court granted the motion for a psychiatric or psychological examination to determine whether Spiotto was insane at the time of offense. (ECF No. 49). The forensic evaluation report concluded that at the time of the commission of the acts constituting the alleged offenses, Spiotto "was not suffering from a mental disease or defect which would render her unable to appreciate the nature, quality, and wrongfulness of her alleged offense behavior." (ECF No. 51, p. 11). A jury trial was reset on January 17, 2017, and then continued by motion of defense counsel until March 13, 2017.

Rosenzweig and Weber negotiated a plea agreement with the Assistant United States Attorney prosecuting the case, and they carefully reviewed the plea agreement with Spiotto before obtaining Spiotto's signature on it. (Doc. 55, ¶ 32). The written plea agreement informed Spiotto of the counts of conviction (Counts Four and Five of the Indictment), each charging Spiotto with sexual exploitation of a minor by production of child pornography in violation of 18 U.S.C. § 2251(a) and (e). (*Id*., ¶ 1). Spiotto acknowledged that she had fully discussed with her counsel the facts of the case and the elements of the crimes to which she was pleading guilty; she agreed that she had committed each of the elements of the crimes to which she was pleading guilty; and, she admitted the factual basis for the plea. (*Id*., ¶ 4). The plea agreement advised Spiotto of her constitutional and statutory rights, including the right to persist in her plea of not guilty; and, it informed her of the penalties, including a maximum of 30 years imprisonment on each count for a total of 60 years. (*Id*., ¶¶ 6, 12). By signing the plea agreement, Spiotto admitted she had entered

into the plea agreement freely, voluntarily, and without reservation, and that her desire to enter a plea of guilty was not the result of any threats or coercion.  (*Id*., ¶ 31).

During the change of plea hearing on February 8, 2017, Spiotto was sworn on oath and examined about the offenses.  (ECF Nos. 54, 104).  The Court asked Spiotto about her age and level of education; whether she was under the influence of alcohol or drugs; whether she understood what was happening in the proceeding; and, whether she had reviewed the Indictment and the charges with her lawyers.  (ECF No. 104, pp. 4-5).  Upon inquiry, Spiotto informed the Court that she was fully satisfied with the counsel, representation, and advice she had received from her lawyers.  (*Id*., p. 5).  She confirmed that the written plea agreement had been explained to her; that she had read it and discussed it with her attorneys before signing it; that it contained her full understanding of the agreement her lawyers negotiated with the Government; and, that she understood the agreement.  (*Id*., pp. 5-6).  She stated that nobody had in any way attempted to force her to plead guilty.  (*Id*., p. 6).  Notably, she also expressed understanding of the possible consequences of her guilty plea, including the maximum sentence of 30 years on each count for a maximum term of imprisonment of 60 years, and a mandatory minimum sentence of 15 years on each count.  (*Id*., p. 7).  She stated an understanding that the Court would not be able to determine the sentence in her case until after the United States Probation Office had prepared a pre-sentence investigation report, and that her sentence could be different than what her attorneys estimated it to be.  (*Id*., pp. 8-9).  She understood she could persist in her plea of not guilty and go to trial, and that by pleading guilty she was giving up her constitutional trial rights, except her right to counsel.  (*Id*., pp. 9-10).  The AUSA recited the facts that could be proven by the government should the case go to trial, and Spiotto acknowledged her understanding of those facts and admitted that the government could prove those facts at trial.  (*Id*., pp. 12-14).  Her counsel advised the Court of

their satisfaction that the government could prove those facts at trial. (*Id.*, p. 14). Spiotto then pleaded guilty to Counts Four and Five of the Indictment. (*Id.*). The Court determined that Spiotto was fully competent and capable of entering an informed plea; that she was aware of the nature of the charges and the consequences of her guilty pleas; and, that her guilty pleas were knowing and voluntary and supported by an independent basis in fact containing all of the essential elements of the offenses to which Spiotto was pleading guilty. (*Id.*).

The record thus undermines Spiotto's claim that she was not informed by her counsel that her guilty pleas could result in a sentence of 720 months. The written plea agreement informed her of this, and she acknowledged she had read the plea agreement, discussed it with her counsel, and that she understood it. Similar inquiries and assurances were made and given during Spiotto's change of plea hearing. Further, the affidavits of her counsel make clear that Spiotto had been fully apprised of the maximum sentence, and that well in advance of her own sentencing she learned that her Co-Defendant, James Spiotto, had been sentenced to 720 months imprisonment. (ECF No. 111-1, p. 2; ECF No. 111-2). Counsel's affidavits also evidence that after "many, many hours" of discussions with Spiotto, including sessions addressing counsel's review of the production videos, Spiotto agreed she would not benefit from a trial and the best course of action would be to accept responsibility, present favorable testimony from a forensic examiner at sentencing, and seek a downward departure or variance. (*Id.*). The affidavits confirm that Spiotto knew she could persist in her plea of not guilty and proceed to trial, but that she chose not to do so because she did not want the videos to be seen by anyone, especially her family. (*Id.*).

Faced with insurmountable evidence of her involvement in the offenses, including the videos, Spiotto knowingly and voluntarily decided to plead guilty to the offenses. That decision represents a voluntary and intelligent choice among the alternative courses of action open to her.

Spiotto's first ground for relief has no merit and should be dismissed.

### C.   Ineffective Assistance of Counsel in the Pretrial Process

Spiotto next asserts that her counsel was constitutionally deficient in failing to move for suppression of evidence, move for dismissal of the Indictment, and move for a change of venue. (ECF No. 108, p. 6).   Spiotto's guilty pleas, knowingly and voluntarily made, resulted in a waiver of the vague constitutional challenges she now raises.

It is well established that a defendant who enters a guilty plea waives all non-jurisdictional defenses.   *Tollett*, 411 U.S. at 266 (guilty pleas in the *Brady*[2] trilogy were found to foreclose direct inquiry into the merits of claimed antecedent constitutional violations); *Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989) ("In pleading guilty, a defendant waives all challenges to the prosecution except those related to jurisdiction," including claims regarding search and seizure), *cert. denied*, 493 U.S. 869 (1989).   Thus, under the *Tollett* line of cases, a defendant who voluntarily and intelligently enters a guilty plea is precluded from later obtaining collateral review of antecedent non-jurisdictional defects.   As discussed in the previous section, Spiotto voluntarily and intelligently entered guilty pleas to the offenses of conviction.   As a result, the claims she now raises regarding her counsel's failure to file pretrial motions were waived by her guilty pleas.

If the Court were to consider Spiotto's pretrial claims, they have no merit.   While she claims that her counsel should have filed a motion to suppress evidence, a motion to dismiss the Indictment, and a motion for change of venue, Spiotto fails to set forth any factual or legal basis for such motions.   Vague and conclusory allegations are insufficient to state a ground for relief under 28 U.S.C. § 2255.   *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986).   *See also:*

---

[2] *Brady v. United States*, 397 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970); *Parker v. North Carolina*, 397 U.S. 790 (1970).

*Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal); *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (brief, conclusory allegations that failed to cite to the record insufficient to support claims of ineffective assistance of counsel). Even *pro se* litigants must state specific facts in support of their claims regarding counsel's allegedly deficient performance. *Saunders v. United States*, 236 F.3d 950, 952-53 (8th Cir. 2001). Spiotto does not.

Ms. Weber states in her Affidavit that after defense counsel reviewed all discovery, looking for Fourth and Fifth Amendment violations, and after discussing the case numerous times with Spiotto, they determined there were no grounds for suppression of any evidence obtained by law enforcement, there were no grounds to seek a change of venue, nor did any circumstances exist to support a motion to dismiss the Indictment. (ECF No. 111-1, p. 3, ¶ 9). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690).

Spiotto's second ground for relief finds no support in the record and should be dismissed.

### D.      Ineffective Assistance of Counsel in the Sentencing Process

Spiotto's third ground for relief is that defense counsel "failed to investigate or present evidence and legal authority material to [her] sentencing," and "failed to object to, unlawful, false and unreliable evidence used to determine Spiotto's guideline sentencing range and ultimate sentence." (ECF No. 108, p. 7). These vague allegations also fail to state a claim for relief, and

the record supports the Court's sentencing determination.

Spiotto does not provide any factual or legal basis to support her sentencing claim.  She does not identify what evidence her counsel failed to investigate or present, nor does she explain what objections should have been made.  Her vague and conclusory allegations cannot support a claim for § 2255 relief.  *Hollis*, supra.

Moreover, the sentencing enhancements assessed to Spiotto were all well supported by the factual basis for her guilty pleas.  The minor victims, ages three months and 11 months, were both under the age of 12, so the age enhancement under U.S.S.G. § 2G2.1(b)(1)(A) was properly applied.  Spiotto's offense conduct included performing oral sex on the infants, so the sexual contact enhancement under U.S.S.G. § 2G2.1(b)(2)(B) was correct.  A cellular phone and computer hard drive were used to produce, possess, and distribute child pornography, so the distribution enhancement pursuant to U.S.S.G. § 2G2.1(b)(3) was appropriate.  The sadistic/masochistic enhancement under U.S.S.G. § 2G2.1(b)(4) was satisfied by Spiotto's conduct in sodomizing one of the infants with a thermometer.  The parents of the minor victims had left the infants in Spiotto's care when the offense conduct occurred, thus triggering the enhancement under U.S.S.G. § 2G2.1(b)(5).  Finally, because Spiotto molested two separate minor victims on two separate occasions, the guideline enhancements for grouping and for pattern of activity were proper.

Spiotto offers nothing in her § 2255 motion to challenge the Court's sentencing findings or show how her counsel's failure to object to them was deficient and prejudicial.  Ineffective assistance of counsel cannot be based on the failure to raise a meritless argument.  *Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).  *See also Haney v. United States*, 962 F.3d 370, 374 (8th Cir. 2020) (where the sentencing

argument had no merit, counsel was not ineffective in declining to advance it).

Prior to sentencing, defense counsel filed a Sentencing Memorandum which argued for a downward variance due to Spiotto's history of mental health issues.  At sentencing, defense counsel presented testimony from a forensic psychologist, Dr. Benjamin Silber, to support Spiotto's request for a downward departure and/or variance due to her diagnosis of borderline personality disorder.  Dr. Silber opined that Spiotto's borderline personality disorder contributed to her willingness to commit the offenses.  Dr. Silber also opined that Spiotto would benefit from therapeutic treatment while in prison, and that she represented a low risk of recidivating.  Considering Spiotto's offense conduct, which the District Judge described as being the worst he had ever seen in a production of child pornography case, the Court was simply not persuaded that a sentence below the guidelines range was called for.  Failure to persuade the Court to grant a downward variance, however, does not rise to the level of deficient performance by counsel.

Accordingly, Spiotto's third ground for relief fails and should be dismissed.

### E.    Ineffective Assistance of Counsel in the Appeal Process

For her fourth ground for relief, Spiotto alleges that her appellate counsel "failed to investigate or present the strongest issues available to [her] for her direct appeal and failed to preserve viable issues for collateral review."  (ECF No. 108, p. 8).  No further supporting facts are alleged.  The claim has no merit.

Spiotto does not suggest what those "strongest issues" on appeal might have been, nor does she bother to specify what "viable issues for collateral review" were not preserved.  Once more, Spiotto's vague and conclusory allegations cannot support a claim for § 2255 relief.  *Hollis*, supra.

The Plea Agreement contained a recitation of the factual basis to support Spiotto's guilty pleas.  (ECF No. 55, pp. 2-4, ¶ 5).  At the change of plea hearing, Spiotto agreed that the facts set

forth by the AUSA could be proven at trial.  (ECF No. 104, pp. 12-14).  Those facts were

incorporated into Spiotto's PSR.  (ECF No. 64, ¶¶ 16-60).  The facts are not favorable to Spiotto,

and as Rosenzweig noted in his affidavit (ECF No. 111-2), they eliminated or detracted from the

potential defenses of duress or insanity.  It was agreed that Spiotto's mental status would be more

effectively presented at sentencing.  While that approach was ultimately not successful, "none of

us saw any other route."  (*Id.*, pp. 1-2).  As previously noted, "[s]trategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."

*Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690).

      According to Rosenzweig, that left the substantive reasonableness of the sentence as the

only plausible issue on appeal.  (ECF No. 111-2, p. 2).  The Eighth Circuit commented on the very

young age of the two infant victims—three and 11 months old—and how Spiotto declared in the

video recordings how much she enjoyed sexually assaulting the infants.  (ECF No. 107-2, p. 2).

The Eighth Circuit considered and addressed the forensic evidence, including Spiotto's diagnosis

of borderline personality disorder and Dr. Silber's testimony at sentencing.  (*Id.*).  It commented

on the district court's analysis of the 18 U.S.C. § 3553(a) sentencing factors and Spiotto's argument

that the district court did not give sufficient weight to her mental condition.  (*Id.*, pp. 2-3).  It found

that the district court appropriately weighed the testimony about Spiotto's borderline personality

disorder and her profile, and correctly determined a downward variance was not warranted because

they were not unique to her situation, but are found in many criminal cases.  (*Id.*, p. 3).  It was

noted that Spiotto's offense level of 52 exceeded the guideline's top level of 43, resulting in a

guidelines range above the statutory maximum, and that the district court properly adjusted it to

720 months, the statutory maximum.  (*Id.*, p. 4).  In the end, the Eighth Circuit concluded the

district court's reasoning that the seriousness of Spiotto's offenses justified a sentence at the

statutory maximum was substantively reasonable.  (*Id.*).

Spiotto has failed to establish either prong of the *Strickland* test regarding appellate counsel's performance, and her fourth ground for relief should be dismissed.

### F.    Sixth Amendment Violation Due to Actual Conflict of Interest

Spiotto next asserts she was denied her Sixth Amendment right to counsel "unburdened by an actual conflict of interest."  (ECF No. 108, p. 8).  She alleges her counsel "labored under an actual conflict of interest which adversely affected their performance."  (*Id.*, p. 9).

Spiotto fails, however, to allege specific facts explaining the nature of the conflict of interest, to whom any conflicting duty was owed, or how it prejudiced her case.  Though a pro se § 2255 motion is to be liberally construed, the petition must assert facts regarding counsel's performance.  *Saunders*, 236 F.3d at 952-53.  As with her other allegations of ineffective assistance of counsel, Spiotto's vague and conclusory allegations regarding a conflict of interest by her counsel are insufficient to support a claim for § 2255 relief.  *Hollis*, supra.

Spiotto's fifth ground for relief should be dismissed.

### G.    Cumulative Impact of Multiple Deficiencies

In her sixth ground for relief, Spiotto alleges she was prejudiced by both the individual and cumulative impact of multiple deficiencies or errors by counsel throughout the proceedings and appeal.  (ECF No. 108, p. 9).  These allegations fail to state a cognizable claim for § 2255 relief.

The Eighth Circuit does not recognize a claim of "cumulative error."  *Pryor v. Norris*, 103 F.3d 710, 714 n. 6 (8th Cir. 1997) (cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own); *United States v. Stewart*, 20 F.3d 911, 917 (8th Cir. 1994) ("we now believe that individual constitutionally insignificant errors cannot be aggregated to create a constitutional violation); *Bird v. Armontrout*, 880 F.2d 1, 11 (8th Cir. 1989), *cert. denied*,

494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990) (cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own); and, *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) ("we repeatedly have recognized 'a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test'").

Accordingly, Spiotto's sixth ground for relief fails.

### H.      Other Alleged Constitutional Violations

For her seventh and final ground for relief, Spiotto generally alleges that her conviction and sentence are violative of the First, Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution.   (ECF No. 108, p. 10).   Once again, Spiotto makes no specific factual allegations, only vague and conclusory statements that are insufficient to support a § 2255 claim.

### I.      No Evidentiary Hearing is Warranted

A petitioner is entitled to an evidentiary hearing on a habeas motion unless the motion and the files and records of the case conclusively show that she is entitled to no relief.   *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005) (citing 28 U.S.C. § 2255).   No evidentiary hearing is required, "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."   *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007); *Anjulo-Lopez v. U.S.*, 541 F.3d 814, 817 (8th Cir. 2008).   Those are the circumstances in this case.   Resolution of Spiotto's claims can be accomplished by reviewing the record and applicable law.   A thorough review of Spiotto's § 2255 motion, the files and records of this case, and applicable law shows that Spiotto is not entitled to relief.   The summary dismissal of Spiotto's § 2255 motion, without an evidentiary hearing, is recommended.

### J.      No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has

made a substantial showing of the denial of a constitutional right. A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

The undersigned concludes that Spiotto has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III.  Conclusion

For the reasons and upon the authorities discussed above, it is recommended that Spiotto's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 108) be **DISMISSED with PREJUDICE**.

It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of November 2020.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE